1
2
3
4
5
6
7       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
8                   AT SEATTLE
9

10   AMAZON.COM, INC., a Delaware corporation;     No.
     AMAZON.COM SERVICES LLC, a Delaware
     limited liability company; and CARTIER        **COMPLAINT FOR DAMAGES**
11   INTERNATIONAL A.G., a Swiss corporation,      **AND EQUITABLE RELIEF**
12                          Plaintiffs,
13          v.
14   An individual d/b/a PHMN9Y3V; Individuals and
     entities doing business as the following Amazon
15   Selling Accounts:  PHMN9Y3V JEWELRY;
     AMAZING JEWELRY YOU WANT;
16   VFDNYTU; MIAO-HE; BYQONE US;
     BYQONE NETWORK; YINJI; and DOES 1-10,
17
18                          Defendants.
19

20                  **I.      INTRODUCTION**

21          1.      This case involves Defendants' unlawful and expressly prohibited advertisement,

22   marketing, and sale of counterfeit luxury jewelry and accessories illegally bearing trademarks of

23   Cartier International A.G. ("Cartier") in the Amazon.com store (the "Amazon Store").

24   Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") and Cartier

25   (collectively with Amazon, "Plaintiffs") jointly bring this lawsuit to permanently prevent and

26   enjoin Defendants from causing future harm to Amazon's and Cartier's customers, reputations,

27   and intellectual property ("IP"), and to hold Defendants accountable for their illegal actions.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 1

2.     Amazon owns and operates the Amazon Store and equivalent counterpart international stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon, while others are sold by Amazon's numerous third-party selling partners. The Amazon brand is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit goods from being sold in its stores. In 2021 alone, Amazon invested over $900 million and employed more than 12,000 people to protect its stores from fraud and abuse. Amazon stopped over 2.5 million suspected bad actor selling accounts before they published a single listing for sale.

3.     Together, Defendants engaged in a sophisticated campaign to market, advertise, and sell counterfeit Cartier products in the Amazon Store, while disguising the products as non-branded in an attempt to evade Amazon's counterfeit detection tools. Specifically, an individual operating with the handle "Phym9y3v" (the "Social Media Defendant") used her social media accounts to direct followers to links for Cartier products—e.g., "a LOVE bracelet"—among other products. Those links, in turn, took customers to offer listing pages in the Amazon Store and other websites that displayed seemingly non-infringing, non-branded products available for purchase. Yet, when the products were ordered, the defendants selling those products (the "Hidden Link Defendants")[1] shipped counterfeit jewelry bearing unauthorized Cartier trademarks—just as the Social Media Defendant had advertised. Other defendants that sold counterfeit Cartier products in the Amazon Store are connected to the Hidden Link Defendants based on use of the same contact information and the sale of the similar counterfeit products (the "Connected Defendants.")[2] On information and belief, the Connected Defendants were involved in the "hidden links" scheme with the other Defendants. The Hidden Link Defendants and the Connected Defendants shall be collectively referred to as the "Trafficker Defendants."

---

[1] The "Hidden Link Defendants" are Phmn9y3v Jewelry; Amazing Jewelry You Want; Vfdnytu; and Miao-He.
[2] The "Connected Defendants" are Byqone Us; Byqone Network; and Yinji.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

4.      In summary, the Social Media Defendant conspired with the Trafficker Defendants to use "hidden links"—where the Amazon offer listing page showed a non-branded, non-infringing item, but the product delivered to the customer is a counterfeit Cartier product— in an attempt to avoid detection by Amazon and to obscure their counterfeiting scheme.

5.      Since its inception in 1847, Cartier has become one of the preeminent symbols of luxury in the world, producing and selling luxury items such as watches, handbags, fragrances, and jewelry, including the famous LOVE bracelet.

6.      Cartier's LOVE collection was first introduced in 1969 with the LOVE bracelet, and the design remains among Cartier's most iconic styles. The LOVE collection is one of the most famous bracelet designs and has been worn by celebrities such as Elizabeth Taylor, Kylie Jenner, and Kanye West, as described by an article in Harper's BAZAAR.[3]

7.      The distinctive LOVE bracelet design is comprised of a binding closure and screw motif, as shown in the photographs of the LOVE bracelet in *Figures 1 through 3* below.[4]  Today, Cartier's LOVE collection has grown to encompass bracelets, earrings, necklaces, and rings.

*Figures 1 through 3 below are images of Cartier's iconic LOVE bracelet.*

*Figure 1*



---

[3] *See 10 Things You Didn't Know About The Cartier Love Bracelet*, Harper's Bazaar (Aug. 31, 2021), https://www.harpersbazaar.com.sg/watches-jewels/jewellery/10-things-didnt-know-cartier-love-bracelet/.
[4] *See LOVE on Cartier® Official Website | Cartier US*, https://www.cartier.com/en-us/jewelry/bracelets/love/.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 3

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

*Figure 2*



*Figure 3*



COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 4

8.      Cartier owns, manages, enforces, licenses, and maintains intellectual property, including various trademarks. Relevant to this Complaint, Cartier owns the following registered trademarks ("Cartier Trademarks").

| Mark | Registration No. (International Classes) |
|------|------------------------------------------|
| *Cartier* | Registration No. 4,178,047 (IC 014) |
| CARTIER | Registration No. 759,202 (IC 014) |
| *Cartier* | Registration No. 411,240 (IC 014) |
| **CARTIER** | Registration No. 411,239 (IC 08, 014) |

True and correct copies of the registration certificates for the Cartier Trademarks are attached as **Exhibit A**.

9.      From June 2020 through June 2021, Defendants advertised, marketed, offered, and sold counterfeit Cartier products in the Amazon Store, using Cartier's registered trademarks, without authorization, to deceive customers about the authenticity and origin of the products and the products' affiliation with Cartier.

10.     As a result of their illegal actions, Defendants have infringed and misused Cartier's IP, willfully deceived and harmed Amazon, Cartier, and their customers, compromised the integrity of the Amazon Store, and undermined the trust that customers place in Amazon and Cartier. Defendants' illegal actions have caused Amazon and Cartier to expend significant

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 5

resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm to Amazon, Cartier, and their customers.

## II.     PARTIES

11.     Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

12.     Cartier International A.G. is a Swiss corporation with its principal place of business in Switzerland. Cartier distributes its luxury goods in the United States through its affiliate, Richemont North America Inc., a Delaware corporation.

13.     Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this Complaint. Defendants are subject to liability for their wrongful conduct both directly and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory infringement.

14.     On information and belief, the Social Media Defendant is an individual who goes by the social media handle "Phmn9y3v" on Instagram and other online platforms where she promotes the sale of counterfeit luxury brands. On further information and belief, the Social Media Defendant resides in Handan, China, and personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.

15.     On information and belief, at least one defendant is an individual or entity doing business as "Phmn9y3v Jewelry" (the "Phmn9y3v Jewelry Defendant" or "Phmn9y3v Jewelry Selling Account") that provided a business address in Handan, China. On further information and belief, the Phmn9y3v Jewelry Defendant is controlled and operated by the Social Media Defendant as both use the moniker "Phmn9y3v" to promote their activities online. In addition, on information and belief, the Phmn9y3v Jewelry Defendant and the Social Media Defendant personally participated in and/or had the right and ability to supervise, direct, and control the

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 6

wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

16.     On information and belief, at least one defendant is an individual or entity doing business as "Vfdnytu" (the "Vfdnytu Defendant" or "Vfdnytu Selling Account") that provided a business address in Shantou, China. On further information and belief, the Vfdnytu Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

17.     On information and belief, at least one defendant is an individual or entity doing business as "Amazing Jewelry You Want" (the "Amazing Jewelry Defendant" or "Amazing Jewelry Selling Account") that provided a business address in Zaoyang, China. On further information and belief, the Amazing Jewelry Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

18.     On information and belief, at least one defendant is an individual or entity doing business as "Miao-He" (the "Miao-He Defendant" or "Miao-He Selling Account") that provided a business address in Yingkou, China. On further information and belief, the Miao-He Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

19.     On information and belief, at least one defendant is an individual or entity doing business as "Byqone US" (the "Byqone US Defendant" or "Byqone US Selling Account") that provided a business address in Guangzhou, China. On further information and belief, the Byqone US Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

20.     On information and belief, at least one defendant is an individual or entity doing business as "Byqone Network" (the "Byqone Network Defendant" or "Byqone Network Selling Account") that provided a business address in Shenzhen, China. On further information and belief, the Byqone Network Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

21.     On information and belief, at least one defendant is an individual or entity doing business as "Yinji" (the "Yinji Defendant" or "Yinji Selling Account") that provided a business address in Jinhua, China. On further information and belief, the Yinji Defendant personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit as a result of that wrongful conduct.

22.     On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, and sell counterfeit Cartier products. The identities of the Doe Defendants are presently unknown to Plaintiffs.

## III.   JURISDICTION AND VENUE

23.     The Court has subject matter jurisdiction over Amazon and Cartier's Lanham Act claims for 1) trademark infringement, 2) contributory trademark infringement, 3) false designation of origin and false advertising, and 4) contributory false designation and false advertising pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon and Cartier's claims for violation of the Washington Consumer Protection Act pursuant to 28 U.S.C. §§ 1332 and 1367.

24.     The Court has personal jurisdiction over all Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Amazon's and Cartier claims arise from those activities. Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

sold in the Amazon Store products bearing counterfeit versions of the Cartier Trademarks and which otherwise infringed Cartier's IP. Defendants caused the shipment of products bearing counterfeit versions of the Cartier Trademarks to consumers in Washington. Each of the Defendants committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon and Cartier substantial injury in Washington.

25.     Further, the Trafficker Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of IP rights and claims related to the sale of counterfeit products in the Amazon Store are state or federal courts located in King County, Washington.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

27.     Venue is proper in this Court also with respect to Defendants by virtue of the allegations stated in paragraph 25 above, which are incorporated herein.

28.     Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

## IV.     FACTS

### A.     Amazon's Efforts to Prevent the Sale of Counterfeit Goods

29.     Amazon works hard to build and protect the reputation of its stores as a place where customers can conveniently select from a wide array of authentic goods and services at competitive prices. Amazon invests vast resources to ensure that when customers make purchases in Amazon's stores—either directly from Amazon or from one of its millions of third-party sellers—customers receive authentic products made by the true manufacturer of those products.

30.     A small number of bad actors seek to take advantage of the trust customers place in Amazon by attempting to create Amazon selling accounts to advertise, market, offer, and sell

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

counterfeit products. These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers. This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

31.     Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products from ever being offered to customers in Amazon's stores. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in Amazon's stores. Amazon's systems automatically and continuously scan thousands of data points to detect and remove counterfeits from its stores and to terminate the selling accounts of bad actors before they can offer counterfeit products. When Amazon identifies issues based on this feedback, it takes action to address them. Amazon also uses this intelligence to improve its proactive prevention controls.

32.     In 2017, Amazon launched the Amazon Brand Registry, a free service to any rights owner with a government-registered trademark, regardless of the brand's relationship with Amazon. Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP. Brand Registry also provides a powerful Report a Violation Tool that allows brands to search for and accurately report potentially infringing products using state-of-the-art image search technology. More than 700,000 brands, including Cartier, are enrolled in Brand Registry, and those brands are finding and reporting 99% fewer suspected infringements since joining Brand Registry.

33.     In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products. Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers, law enforcement, and customers to determine the authenticity of any Transparency-enabled

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

product, regardless of where the product was purchased. In 2021, over 23,000 brands were using Transparency, enabling the protection of more than 750 million product units.

34.     In 2019, Amazon launched Project Zero, a program to empower brands to help Amazon drive counterfeits to zero. Amazon's Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from Amazon's stores. This enables brands to take down counterfeit product offerings on their own within minutes. In 2021, there were more than 20,000 brands enrolled in Project Zero. For every listing removed by a brand, Amazon's automated protections removed more than 1,000 listings through scaled technology and machine learning, stopping those listings from appearing in Amazon's stores.

35.     Amazon also uses industry-leading technology to analyze hundreds of unique data points and robust processes to verify information provided by potential sellers, and its ongoing efforts have been successful. Amazon has robust seller verification processes.  In 2021, Amazon prevented over 2.5 million attempts to create new selling accounts, stopping bad actors before they published a single product for sale. Amazon is also constantly innovating on these tools and systems. For example, Amazon is implementing one-on-one interviews with prospective sellers through video chat or in person at an Amazon office to verify sellers' identities and government-issued documentation. Moreover, Amazon also is verifying new and existing sellers' addresses by sending information, including a unique code, to the sellers' addresses. These measures have made it more difficult for bad actors to hide.

36.     Once a seller begins selling in Amazon's stores, Amazon continues to monitor the selling account's activities for risks. If Amazon identifies a bad actor, it closes that actor's selling account, withholds funds disbursement, and investigates whether other accounts are involved in unlawful activities.

37.     In addition to the measures discussed above, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits, like this one, are integral components of Amazon's efforts to combat

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

counterfeits.

**B.      Cartier and Its Anti-Counterfeiting Efforts**

38.      Cartier goes to great lengths to protect consumers from counterfeits of its products, and is committed to leading efforts to combat counterfeit products. Cartier utilizes both internal and external resources to combat counterfeits, piracy, and distribution abuse online. This includes trained staff who consistently monitor online retailer sites around the world for IP infringements and counterfeit sellers. Cartier also works with a third-party brand protection service vendor on the detection and removal of product listings violating Cartier's IP rights.

39.      Cartier enrolled in Amazon Brand Registry on June 9, 2017, and Project Zero on May 29, 2019. Cartier actively uses the tools and protections provided by these programs.

**C.      The Trafficker Defendants Created Amazon Selling Accounts and Agreed Not to Sell Counterfeit Goods**

40.      The Trafficker Defendants controlled and operated the seven Amazon Selling Accounts detailed in Section E below, through which they sought to advertise, market, sell, and distribute counterfeit Cartier products. In connection with these Selling Accounts, the Trafficker Defendants provided names, email addresses, and banking information for each account.

41.      To become a third-party seller in the Amazon Store, sellers are required to agree to the BSA, which governs the applicant's access to and use of Amazon's services and states Amazon's rules for selling in the Amazon Store. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of [its] obligations and exercise of [its] rights" under the BSA. A true and correct copy of the applicable version of the BSA, namely, the version the Trafficker Defendants last agreed to when using Amazon's Services, is attached as **Exhibit B**.

42.      Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of Amazon's policies, reserving the right to withhold payments and terminate the account of any seller who engages in such conduct. Ex. B, ¶¶ 2-3. The BSA requires the seller to defend, indemnify and hold harmless

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Amazon against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.* ¶ 6.1.

43.     Additionally, the BSA incorporates, and sellers therefore agree to be bound by, Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit C**. The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon Store:

- The sale of counterfeit products is strictly prohibited.

- You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]

- You must provide records about the authenticity of your products if Amazon requests that documentation[.]

Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfilment centers, and other legal consequences.

*Id.*

44.     Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store together with the consequences of doing so:

- Sell Only Authentic and Legal Products. It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:

  o Bootlegs, fakes, or pirated copies of products or content

  o Products that have been illegally replicated, reproduced, or manufactured

  o Products that infringe another party's intellectual property rights

- Maintain and Provide Inventory Records. Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.

- Consequences of Selling Inauthentic Products. If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

account (and any related accounts), destroy any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.

- Amazon Takes Action to Protect Customers and Rights Owners. Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from reaching our customers. As a result of our detection and enforcement activities, Amazon may:

  o Remove suspect listings.

  o Take legal action against parties who knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

- Reporting Inauthentic Products. We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders. You may view counterfeit complaints on the Account Health page in Seller Central.

*Id.*

45.     When they registered as third-party sellers in the Amazon Store and established their Selling Accounts, the Trafficker Defendants agreed not to advertise, market, offer, sell, or distribute counterfeit products.

**D.      The Social Media Defendant Advertised, Promoted, and Facilitated Sales of the Trafficker Defendants' Counterfeit Products.**

46.     The Social Media Defendant operates and controls social media accounts promoting, advertising, and facilitating the sale of various counterfeit luxury products, including fake Cartier bracelets, necklaces, and rings.

47.     Since September 5, 2020, the Social Media Defendant has created at least 64 Instagram posts that have advertised jewelry products associated with luxury brands and has amassed over a thousand social media followers. The Social Media Defendant primarily used Linktree, a landing page where influencers and other individuals can post links to other websites, in order to promote the sale of counterfeit goods.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 14

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

48.     The Social Media Defendant posted photos of Cartier counterfeit jewelry, alongside a description of the infringing product and a link to an offer listing page in the Amazon Store and other sites, where the product could be ordered. *Figure 4* below is an example of the Social Media Defendant's Linktree page advertising counterfeit Cartier jewelry.

*Figure 4 is a screenshot of the Social Media Defendant's Linktree page showing links to various offer listing pages for counterfeit Cartier LOVE bracelets, LOVE rings, and LOVE necklaces.*



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

49.     As shown above, the Social Media Defendant promoted a link to a "LOVE bracelet."  However, when customers accessed the offer listing page at the link provided, the product listing page displayed an image of a non-branded bracelet, offered by a "Generic" brand, and the description for the product did not reference the Cartier brand. Instead, in a bald attempt to circumvent Amazon's anti-counterfeiting detection tools, the product was disguised as a non-branded product with the description "Women's Fashion Classic Screw Love Titanium Steel Bracelet" with no mention of Cartier and a carefully curated image that hid the fact that the product bears the screw motif of the authentic LOVE bracelet.

*Figure 5 shows an offer listing by the Amazing Jewelry Selling Account*



50.     Although the offer listing page was disguised as a non-branded product, the product that was shipped was a counterfeit Cartier LOVE bracelet bearing the Cartier Trademarks.

51.     Meanwhile, the Social Media Defendant's posts leave no doubt that her promotion of counterfeit goods is knowing and willful. The landing page for her Instagram account states "high quality copy" above the link to her Linktree page. Below the link is a photograph of what appears to be a counterfeit Cartier bracelet.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 16

*Figure 6 is the Social Media Defendant's Instagram account's landing page*



52.     On the Social Media Defendant's Instagram account, she posted images of Cartier counterfeit LOVE bracelets and a ring that appear to be the same counterfeits sold by the Trafficker Defendants she linked to on her Linktree page. She commented to one follower, "Will be sold on Amazon on weekends."

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14

*Figure 7 below is an image of Cartier LOVE bracelets
posted by the Social Media Defendant on her Instagram page*



15      53.    On information and belief, the Social Media Defendant conspired with the

16   Trafficker Defendants to perpetuate the "hidden" link scheme, and also personally controlled the

17   first Selling Account named in Section E below, the Phmn9y3v Jewelry Selling Account.

18
19
20
21
22
23
24
25
26
27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

*Figure 8 below is an image of a Cartier LOVE ring*
*posted by the Social Media Defendant on her Instagram page*



### E. Inspection of Counterfeit Products from the Trafficker Defendants' Amazon Selling Accounts

54.     As set forth below, Cartier has confirmed that the products offered for sale by the Trafficker Defendants are infringing products made to imitate authentic Cartier products, and which bear counterfeit marks without authorization that are identical to or substantially indistinguishable from Cartier Trademarks.

#### i.     Phmn9y3v Jewelry Selling Account

55.     At all times described herein, the Phmn9y3v Jewelry Selling Account was controlled and operated by the Phmn9y3v Jewelry Defendant, the Social Media Defendant, and, on information and belief, other unknown parties.

56.     From November 2020 through June 2021, the Phmn9y3v Jewelry Defendant advertised, marketed, offered, and sold inauthentic Cartier LOVE bracelets in the Amazon Store bearing unauthorized Cartier Trademarks through the Phmn9y3v Jewelry Selling Account. Amazon sent images to Cartier of products from quarantined inventory for the Phmn9y3v

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Jewelry Selling Account. Cartier reviewed the images of the products and confirmed that the items are counterfeit. The products' serial numbers do not correspond to serial numbers assigned to genuine Cartier LOVE bracelets, and certain of the products' aesthetic features differ from those of genuine Cartier LOVE bracelets.

### ii.   Vfdnytu Selling Account

57.   At all times described herein, the Vfdnytu Selling Account was controlled and operated by the Vfdnytu Defendant and, on information and belief, other unknown parties.

58.   From June 2020 through at least May 2021, the Vfdnytu Defendant advertised, marketed, offered, and sold inauthentic Cartier LOVE bracelets in the Amazon Store bearing unauthorized Cartier Trademarks through the Vfdnytu Selling Account. Amazon sent images to Cartier of products from quarantined inventory for the Vfdnytu Selling Account. Cartier reviewed the images of the products and confirmed that the items are counterfeit. The products' serial numbers do not correspond to serial numbers assigned to genuine Cartier LOVE bracelets, and certain of the products' aesthetic features differ from those of genuine Cartier LOVE bracelets.

### iii.   Amazing Jewelry Selling Account

59.   At all times described herein, the Amazing Jewelry Selling Account was controlled and operated by the Amazing Jewelry Defendant and, on information and belief, other parties, known and unknown.

60.   From February 2021 through at least June 2021, the Amazing Jewelry Defendant advertised, marketed, offered, and sold inauthentic Cartier LOVE bracelets in the Amazon Store bearing unauthorized Cartier Trademarks through the Amazing Jewelry Selling Account. Amazon sent images and physical samples to Cartier of products from quarantined inventory for the Amazing Jewelry Selling Account. Cartier reviewed the images and physical samples of the products and confirmed that the items are counterfeit. The products' serial numbers do not correspond to serial numbers assigned to genuine Cartier LOVE bracelets, and certain of the products' aesthetic features differ from those of genuine Cartier LOVE bracelets.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

#### iv.      Miao-He Selling Account

61.      At all times described herein, the Miao-He Selling Account was controlled and operated by the Miao-He Defendant and, on information and belief, other unknown parties.

62.      From February 2020 through at least July 2020, the Miao-He Defendant advertised, marketed, and offered inauthentic Cartier LOVE bracelets and rings in the Amazon Store bearing unauthorized Cartier Trademarks through the Miao-He Selling Account. Amazon sent images to Cartier of products from quarantined inventory for the Maio-He Selling Account. Cartier reviewed the images of the products and confirmed that the items are counterfeit. The products' serial numbers do not correspond to serial numbers assigned to genuine Cartier LOVE bracelets and rings, and certain of the products' aesthetic features differ from those of genuine Cartier LOVE bracelets and rings.

#### v.      Byqone US Selling Account

63.      At all times described herein, the Byqone US Selling Account was controlled and operated by the Byqone US Defendant and, on information and belief, other unknown parties.

64.      From October 2019 through at least April 2021, the Byqone US Defendant advertised, marketed, offered, and sold inauthentic Cartier LOVE bracelets and rings in the Amazon Store bearing unauthorized Cartier Trademarks through the Byqone US Selling Account. Amazon sent images and physical samples to Cartier of products from quarantined inventory for the Byqone US Selling Account. Cartier reviewed the images and physical samples of the products and confirmed that the items are counterfeit. The products' serial numbers do not correspond to serial numbers assigned to genuine Cartier LOVE bracelets and rings, and certain of the products' aesthetic features differ from those of genuine Cartier LOVE bracelets and rings.

#### vi.      Byqone Network Selling Account

65.      At all times described herein, the Byqone Network Selling Account was controlled and operated by the Byqone Network Defendant and, on information and belief, other unknown parties.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 21

66.     From July 2020 through at least January 2021, the Byqone Network Defendant advertised, marketed, offered, and sold inauthentic Cartier LOVE bracelets in the Amazon Store bearing unauthorized Cartier Trademarks through the Byqone Network Selling Account. Amazon sent images and a physical sample to Cartier of products from quarantined inventory for the Byqone Network Selling Account. Cartier reviewed the images and physical samples of the products and confirmed that the items are counterfeit. The products' serial numbers do not correspond to serial numbers assigned to genuine Cartier LOVE bracelets, and certain of the products' aesthetic features differ from those of genuine Cartier LOVE bracelets.

### vii.     Yinji Selling Account

67.     At all times described herein, the Yinji Selling Account was controlled and operated by the Yinji Defendant and, on information and belief, other unknown parties.

68.     From February 2021 through at least April 2021, the Yinji Defendant advertised, marketed, offered, and sold inauthentic Cartier LOVE bracelets in the Amazon Store bearing unauthorized Cartier Trademarks through the Yinji Selling Account. Amazon sent images and physical samples to Cartier of products from quarantined inventory for the Yinji Selling Account. Cartier reviewed the images and physical samples of the products and confirmed that the items are counterfeit. The products' serial numbers do not correspond to serial numbers assigned to genuine Cartier LOVE bracelets, and certain of the products' aesthetic features differ from those of genuine Cartier LOVE bracelets.

### F.     Defendants' Coordinated Sale of Counterfeit Cartier Products

69.     On information and belief, Defendants operated in concert with one another in their counterfeiting activities. Specifically, on information and belief, the Social Media Defendant, through her Linktree page, promoted and advertised links to offer listing pages for inauthentic Cartier products sold in the Amazon Store by the Hidden Link Defendants; namely, Phmn9y3v Defendant, Vfdnytu Defendant, Amazon Jewelry Defendant, and Miao-He Defendant.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

70.     On information and belief, the Connected Defendants conspired with Defendants' "hidden link" scheme for the sale of counterfeit Cartier products; namely, Byqone US Defendant; Byqone Network Defendant; and Yinji Defendant. The Connected Defendants are connected to the Hidden Link Defendants in two ways: (1) they sold similar counterfeit Cartier products, and (2) used a common phone number that customers could use to coordinate the return of products they purchased from Defendants.

### G.     Amazon and Cartier Shut Down the Trafficker Defendants' Accounts

71.     By selling counterfeit Cartier products, the Trafficker Defendants violated the BSA and Amazon's policies. Defendants also knowingly and willfully used Cartier's IP in connection with the advertisement, marketing, distribution, offering for sale, and sale of counterfeit and infringing Cartier products.

72.     At all times, Defendants knew they were prohibited from violating third-party IP rights or any applicable laws while selling products in the Amazon Store. Defendants have deceived Amazon's customers and Amazon, infringed and misused the IP rights of Cartier, harmed the integrity of and customer trust in the Amazon Store, and tarnished Amazon's and Cartier's brands.

73.     Amazon, after receiving notice from Cartier, verified the Trafficker Defendants' unlawful sale of counterfeit Cartier products, conducted an investigation, and blocked the Trafficker Defendants' Selling Accounts. In doing so, Amazon exercised its rights under the BSA to protect customers and the reputations of Amazon and Cartier.

### V.     CLAIMS

**FIRST CLAIM**
*(by Cartier against all Defendants)*
**Trademark Infringement – 15 U.S.C. § 1114**

74.     Plaintiff Cartier incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

75.     Defendants' activities constitute infringement of the Cartier Trademarks as described in the paragraphs above.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 23

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

76.     Cartier advertises, markets, offers, and sells its products using the Cartier Trademarks described above and uses those trademarks to distinguish its products from the products and related items of others in the same or related fields.

77.     Because of Cartier's long, continuous, and exclusive use of the Cartier Trademarks identified in this Complaint, the trademarks have come to mean and are understood by customers and the public to signify products from Cartier.

78.     Defendants unlawfully advertised, marketed, offered, and sold products bearing counterfeit versions of the Cartier Trademarks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Specifically, Defendants intended customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by Cartier and likely caused such erroneous customer beliefs.

79.     As a result of Defendants' wrongful conduct, Cartier is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, Cartier is entitled to statutory damages under 15 U.S.C. § 1117(c).

80.     Cartier is further entitled to injunctive relief, including an order impounding all infringing products and promotional materials in Defendants' possession. Cartier has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Cartier Trademarks are unique and valuable properties that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Cartier and Cartier's reputation and goodwill such that Cartier could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) Defendants' wrongful conduct and the resulting harm to Cartier is likely to be continuing.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1

2

### SECOND CLAIM
### (by Cartier against the Social Media Defendant)
### Contributory Trademark Infringement – 15 U.S.C. § 1114

3

4

81.     Cartier incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

5

6

7

82.     In addition to being directly liable for trademark infringement, the Social Media Defendant is also liable for contributory trademark infringement for her knowing advertisement and marketing of counterfeit products offered by the Trafficker Defendants.

8

9

10

83.     The Trafficker Defendants are engaging in illegal conduct including but not necessarily limited to the promotion, advertisement, offer for sale, sale, and distribution of counterfeit goods in violation of the Lanham Act.

11

12

13

14

15

84.     The Social Media Defendant has actual knowledge of the Trafficker Defendants' illegal activities based on her promotion of their products in the Amazon Store through her Instagram page and other social media accounts, touting these products as "high quality cop[ies]" and posting "hidden links" for non-branded products next to descriptions or photographs of Cartier products.

16

17

18

19

20

21

85.     The Social Media Defendant is materially encouraging, enabling, and contributing to the Trafficker Defendants' infringing conduct in the Amazon Store by, among other things, operating one of the Defendants' Selling Accounts, advertising counterfeit products, and facilitating counterfeit sales by the Trafficker Defendants by using her Instagram and Linktree account to direct her social media followers to the Trafficker Defendants' counterfeit offer listings in the Amazon Store.

22

23

86.     The Social Media Defendant therefore bears contributory liability for the Trafficker Defendants counterfeiting of Cartier's Trademarks in violation of 15 U.S.C. 1114.

24

25

26

27

87.     As a result of the Social Media Defendant's wrongful conduct, Cartier is entitled to recover its actual damages, the Social Media Defendant's profits attributable to the infringement, and treble damages and attorneys' fees pursuant to 15 U.S.C. 1117(a) and (b). Alternatively, Cartier is entitled to statutory damages under 15 U.S.C. § 1117(c).

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

88.     Cartier is further entitled to injunctive relief, including an order impounding all infringing products and promotional materials in the Social Media Defendant's possession. Cartier has no adequate remedy at law for the Social Media Defendant's wrongful conduct because, among other things: (a) the Cartier Trademarks are unique and valuable properties that have no readily determinable market value; (b) the Social Media Defendant's infringement constitutes harm to Cartier and Cartier's reputation and goodwill such that Cartier could not be made whole by any monetary award; (c) if the Social Media Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) the Social Media Defendant's wrongful conduct and the resulting harm to Cartier is likely to be continuing.

### THIRD CLAIM
*(by Cartier against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

89.     Plaintiff Cartier incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

90.     Cartier owns the Cartier Trademarks and advertises, markets, offers, and sells its products using those trademarks described above and uses the trademarks to distinguish its products from the products and related items of others in the same or related fields.

91.     Because of Cartier's long, continuous, and exclusive use of the Cartier Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify products from Cartier.

92.     Defendants' wrongful conduct includes the infringement of the Cartier Trademarks in connection with Defendants' commercial advertising or promotion and offering for sale and sale of counterfeit Cartier products in interstate commerce.

93.     In advertising, marketing, offering, and selling products bearing counterfeit versions of the Cartier Trademarks, Defendants have used, and on information and belief continue to use, the trademarks referenced above to compete unfairly with Cartier and to deceive customers. Upon information and belief, Defendants' wrongful conduct misleads and confuses

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

customers and the public as to the origin and authenticity of the goods and services advertised, marketed, offered, or sold in connection with the Cartier Trademarks and wrongfully trades upon Cartier's goodwill and business reputation.

94.     Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by Cartier, all in violation of 15 U.S.C. § 1125(a)(1)(A).

95.     Defendants' conduct also constitutes willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

96.     Cartier is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below. Defendants' acts have caused irreparable injury to Cartier. The injury to Cartier is irreparable and, on information and belief, continuing. An award of monetary damages cannot fully compensate Cartier for its injuries, and Cartier lacks an adequate remedy at law.

97.     Cartier is further entitled to recover Defendants' profits, Cartier's damages for its losses, and Cartier's costs to investigate and remediate Defendants' conduct and bring this action, including its attorney's fees, in an amount to be determined. Cartier is also entitled to the trebling of any damages award as allowed by law.

## FOURTH CLAIM
### *(by Amazon against all Defendants)*
**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

98.     Plaintiff Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

99.     Amazon's reputation for trustworthiness is at the heart of its relationship with customers. Defendants' actions in selling counterfeits pose a threat to Amazon's reputation because they undermine and jeopardize customer trust in the Amazon Store.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

100.     Specifically, Defendants deceived Amazon and its customers about the authenticity of the products they were advertising, marketing, offering, and selling, in direct and willful violation of the BSA and Amazon's Anti-Counterfeiting Policies. Defendants' deceptive acts were material to Amazon's decision to allow Defendants to sell their products in the Amazon Store because Amazon would not have allowed Defendants to do so but for their deceptive acts.

101.     In advertising, marketing, offering, and selling counterfeit Cartier products in the Amazon Store, Defendants made false and misleading statements of fact about the origin, sponsorship, or approval of those products in violation of 15 U.S.C. § 1125(a)(1)(A).

102.     Defendants' acts also constitute willful false statements in connection with goods and/or services distributed in interstate commerce in violation of 15 U.S.C. § 1125(a)(1)(B).

103.     As described above, Defendants, through their illegal acts, have willfully deceived Amazon and its customers, jeopardized the trust that customers place in the Amazon Store, tarnished Amazon's brand and reputation, and harmed Amazon and its customers. Defendants' misconduct has also caused Amazon to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from causing further harm to Amazon and its customers. Defendants' illegal acts have caused irreparable injury to Amazon and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish seller accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon for its injuries, and thus Amazon lacks an adequate remedy at law.

104.     Amazon is entitled to an injunction against Defendants, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with its attorneys' fees and costs in bringing this lawsuit.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

**FIFTH CLAIM**
*(by Cartier and Amazon against the Social Media Defendant)*
**Contributory False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**

105.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

106.    In addition to being directly liable for false designation of origin and false advertising, the Social Media Defendant is also liable for contributory false designation of origin and false advertising for her knowing facilitation and assistance in the sale of counterfeit products offered by the Trafficker Defendants.

107.    The Social Media Defendant's actions were designed to encourage and facilitate the sale of products by the Trafficker Defendants that the Social Media Defendant knew or should have known were counterfeit and that were likely to lead to consumer confusion about the source or sponsorship of the goods. As set forth above, the Social Media Defendant repeatedly directed and instructed her social media followers on how to purchase infringing products in the Amazon Store, directing them that by clicking on the links on her Instagram page or by sending her a direct message via Instagram, her followers would learn how to purchase "high quality cop[ies]" of luxury brands such as Cartier in the Amazon Store.

108.    Once viewed in the Amazon Store, the counterfeit products showed no branding. The Social Media Defendant's actions were designed to conceal the sale of counterfeit products in the Amazon Store through "hidden links" in an effort to deceive Amazon and evade Amazon's anti-counterfeit detection systems.

109.    As described above, the Social Media Defendant, through her illegal acts, has jeopardized the trust that customers place in the Amazon Store, tarnished Cartier's brand and reputation and goodwill, and harmed Amazon and its customers. The Social Media Defendant's misconduct has also caused Plaintiffs to expend significant resources to investigate and combat her wrongdoing and to bring this lawsuit to prevent her from causing further harm to Plaintiffs and their customers. The Social Media Defendant's illegal acts have caused irreparable injury to Plaintiffs and, on information and belief, that injury is ongoing to the extent that the Social Media

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Defendant continues to advertise and actively facilitate the sale of counterfeit products in the Amazon Store. An award of monetary damages alone cannot fully compensate Plaintiffs for their injuries, and thus Plaintiffs lack an adequate remedy at law.

110.    Plaintiffs are entitled to an injunction against the Social Media Defendant, their officers, agents, representatives, servants, employees, successors and assigns, and all other persons in active concert or participation with her, as set forth in the Prayer for Relief below, along with its attorneys' fees and costs in bringing this lawsuit.

111.    Cartier is further entitled to recover the Social Media Defendant's profits and Plaintiffs' costs to investigate and remediate the Social Media Defendant's wrongful conduct and bring this action, including its attorneys' fees, in an amount to be determined. Cartier is also entitled to the trebling of any damages award as allowed by law.

## SIXTH CLAIM
### *(by Cartier and Amazon against all Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010, *et seq.***

112.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

113.    Defendants' advertising, marketing, offering, and selling of counterfeit Cartier products constitute an unfair method of competition and unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

114.    Defendants' advertising, marketing, offering, and selling of counterfeit Cartier products harms the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

115.    Defendants' advertising, marketing, offering, and selling of counterfeit Cartier products directly and proximately causes harm to and tarnished Plaintiffs' reputations and brands and damages their business and property interests and rights.

116.    Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and recover their attorneys' fees and costs. Cartier further seeks to recover its actual damages, trebled.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 30

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.     That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, servants, employees, successors, and assigns, and all others in active concert or participation with them, from:

      (i)     selling products in Amazon's stores;

      (ii)    selling products to Amazon or any affiliate;

      (iii)   opening or attempting to open any Amazon selling accounts;

      (iv)   manufacturing, distributing, offering to sell, or selling any product using Cartier's brand or trademarks or which otherwise infringes Cartier's intellectual property on any platform or in any medium;

      (v)    assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iv) above;

B.     That the Court enter judgment in Plaintiffs' favor disabling the Social Media Defendant's Instagram, Linktree, and other social media accounts that promote, advertise, market, offer to sell, or facilitate the sale of any product using the Cartier's brand or trademarks, or which otherwise infringe Cartier's IP;

C.     That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

D.     That the Court enter an order pursuant to 15 U.S.C. § 1116 impounding all counterfeit and infringing products bearing the Cartier Trademarks or that otherwise infringe Cartier's IP, and any related materials, including business records, in Defendants' possession or under their control;

E.     That the Court enter an order requiring Defendants to provide Plaintiffs a full and complete accounting of all amounts due and owing to Cartier as a result of Defendants' unlawful activities;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 31

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

F.     That Defendants be ordered to pay the maximum amount of prejudgment interest authorized by law;

G.     That Defendants be required to pay all general, special, and actual damages which Cartier has sustained or will sustain as a consequence of Defendants' unlawful acts, together with statutory damages, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(b), RCW 19.86.020, or otherwise allowed by law;

H.     That Defendants be required to pay the costs of this action and Plaintiffs' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

I.     That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

J.     That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

DATED this 15th day of June, 2022.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiffs*

By *s/ Scott R. Commerson*
Scott R. Commerson, WSBA #58085
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

By *s/ Lindsey E. Mundt*
Lindsey E. Mundt, WSBA #49394
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Tel: (206) 622-3150
Fax: (206) 757-7700
Email: lindseymundt@dwt.com

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 32

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax