UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM INC., *et al.*,

    Plaintiffs,

 v.

PHMN9Y3V, *et al.*,

    Defendants.

Case No. C22-840-MJP-MLP

ORDER

This matter is before the Court on Plaintiffs Amazon.com, Inc., Amazon.com Services LLC, and Cartier International A.G.'s (collectively, "Plaintiffs") *Ex Parte* Motion for Alternative Service on Defendants Li Xinjuan, Shenzhen Xinjianhe Technology Co., Ltd., and Zhu Jian (collectively, "Defendants").[1] (Mot. (dkt. # 39).) Having considered Plaintiffs' submissions, the governing law, and the balance of the record, the Court GRANTS Plaintiffs' Motion (dkt. # 39).

**I. BACKGROUND**

Plaintiffs have filed an amended complaint alleging Defendants acted in concert to advertise and sell counterfeit Cartier-branded luxury jewelry via Amazon Selling Accounts.

---

[1] Two remaining defendants, Nghia Choung and Zhou Fuhan, have already been served. (Dkt. ## 28, 32-33.)

ORDER - 1

(Am. Compl. (dkt. # 25) at ¶ 3.) Plaintiffs allege Li Xinjuan and Shenzhen Xinjianhe Technology Co., Ltd., operated a social media account with the handle "Phmn9y3v" that directed followers to the Amazon Selling Accounts, which appeared to sell non-infringing products but actually shipped Cartier counterfeit products. (*Id.* at ¶¶ 3-4, 16-17.)

Plaintiffs' investigation revealed a physical address in China for Li Xinjuan and Zhu Jian, which is also the registered business address for Shenzhen Xinjianhe Technology Co., Ltd. (Commerson Decl. (dkt. # 41) at ¶ 7.) Plaintiffs' counsel attests in a declaration that China's Public Security Bureau raided the address, confirmed Zhu Jian's presence there, and confiscated counterfeit Cartier-branded bracelets. (*Id.*)

Plaintiffs attempted to serve Defendants at that address via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). (Commerson Decl. at ¶ 8.) Plaintiffs submitted the required documents on August 23, 2023, to China's Central Authority pursuant to the Hague Convention. Plaintiffs have received no certification that service was effected on Defendants. (*Id.*) Accordingly, Plaintiffs seek leave to serve by alternative methods.

Utilizing third-party discovery authorized by the Court, Plaintiffs identified Zhu Jian as the registered account holder for bank accounts that received disbursements from the Phmn9y3v Jewelry, Amazing Jewelry You Want, Vfdnytu, and Yinji Amazon Selling Accounts, and identified Li Xinjuan as the registered account holder for a bank account that received disbursements from the Miao-He Amazon Selling Account. (Commerson Decl. at ¶ 4.) The Phmn9y3v social media account was registered with the email address used to operate the Miao-He Amazon Selling Account. (*Id.* at ¶ 5; Garrett Decl. (dkt. # 40) at ¶ 4.) The Phmn9y3v social media account was registered with a PayPal account registered to Shenzhen Xinjianhe

ORDER - 2

Technology Co., Ltd., and that PayPal account was registered with the email address used to operate the Yinji Amazon Selling Account. (Commerson Decl. at ¶ 5; Garrett Decl. at ¶ 4.) Plaintiffs seek to serve Defendants via the email addresses registered with the Amazon Selling Accounts traced to each of them. (Mot. at 2-3.)

## II. DISCUSSION

Federal Rule of Civil Procedure 4(f) permits service of process on individuals in foreign countries by: (1) internationally agreed methods such as those authorized by the Hague Convention; (2) if there is no internationally agreed means, in accordance with the foreign country's law; or (3) by "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). To obtain a court order under Rule 4(f)(3), a plaintiff must "demonstrate that the facts and circumstances of the present case necessitated the district court's intervention." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).

In addition to the requirements of Rule 4(f), "a method of service of process must also comport with constitutional notions of due process." *Rio*, 284 F.3d at 1016. "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

### A. Rule 4(f)

Plaintiffs request Court intervention because they have been unable to effect service via the Hague Convention after eight months and have no other means to effect service on Defendants. (Mot. at 2.) Plaintiffs contend Rule 4(f)(3) and the Hague Convention both allow for service by email on defendants located in China. (*Id.* at 9.)

ORDER - 3

The Court concludes that Plaintiffs have adequately shown that the Court's intervention is necessary. The Rules acknowledge that a party need not wait an unlimited amount of time for Hague Convention service and that six months is an appropriate period. *See* Fed. R. Civ. P. 4 Advisory Committee Notes, 1993 Amendments, subdivision (f) ("The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months."); *see also Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co.*, 2019 WL 6310564, at *2 (W.D. Wash. Nov. 25, 2019) (recognizing "alternative means of service [are warranted in] cases of urgency or the failure of a country's Central Authority to effect service within the six-month period provided by the Hague Convention."). Here, the fact that Hague Convention service, properly initiated, has not been completed after eight months establishes that the Court's intervention is necessary. *Cf. Meyer v. Mittal*, 2022 WL 1000774, at *2 (D. Or. Apr. 4, 2022) (permitting service by email and to former counsel after service via Hague Convention remained incomplete after eight months).

This Court and others have concluded that email service on individuals located in China is not prohibited by the Hague Convention or any other international agreement. *See Rubie's Costume Co., Inc.*, 2019 WL 6310564, at *3 (email service in China "not expressly prohibited by international agreement"). The Hague Convention itself provides that a court may even "give judgment" if Hague Convention service has not been effected by the Central Authority after "a period of time of not less than six months, considered adequate by the judge[.]" Hague Convention, art. 15, *available at* https://www.hcch.net/en/instruments/conventions/full-text/?cid=17 (last viewed May 6, 2024). Plaintiffs have adequately shown that an order permitting service by email would comport with Rule 4(f).

ORDER - 4

**B.     Due Process**

The Court next addresses service of process via the email addresses registered with the Amazon Selling Accounts Plaintiffs allege were used to sell counterfeit products. The Court must determine whether this method of service comports with constitutional due process—that is, whether it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

Plaintiffs contend email service comports with due process because: (1) the email addresses "are the primary means of communication" between Amazon and Defendants related to the Amazon Selling Accounts; and (2) "Plaintiffs recently sent 'test' emails to each of the Defendants' email address, and have confirmed that the registered email addresses for each Defendant remain[] functional." (Pls.' Mot. at 11 (citing Garrett Decl. ¶¶ 4-5; Commerson Decl. at ¶ 10).)

Plaintiffs point to *Facebook, Inc. v. Banana Ads, LLC*, where a court authorized service via email on foreign defendants who "rely on electronic communications to operate their businesses" and for whom plaintiff had "valid email addresses[.]" 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012). In that case, however, it appears that the defendants' businesses were ongoing and used internet domain names that, when registered, "required [defendants] to provide accurate contact information and to update that information." *Id.* at *1. Plaintiffs also point to *Rio*, where the Ninth Circuit concluded that ordering service by email was within the district court's discretion where the defendant had "structured its business such that it could be contacted *only* via its email address" and "designated its email address as its preferred contact

ORDER - 5

information." 284 F.3d at 1018. In that case, as in *Facebook*, the defendant's business was ongoing. *Id.* at 1012-13.

The situation is somewhat less clear here, however, as Defendants' businesses using the Amazon Selling Accounts are no longer operating. Plaintiffs allege the Amazon Selling Accounts sold counterfeit jewelry through at least mid-2021. (Am. Compl. at ¶¶ 56-63, 68-69.) At some later point, however, "Amazon . . . blocked Defendants' Selling Accounts." (*Id.* at ¶ 73.) It is unclear when Amazon blocked the Amazon Selling Accounts and whether Defendants were notified. Plaintiffs do not indicate whether the Phmn9y3v social media account and/or its associated PayPal account are still operating.

Nevertheless, Plaintiffs provide evidence that the email addresses they propose effecting service through were actively used in operating the businesses that allegedly sold counterfeit goods. Individuals used the email addresses to open the Amazon Selling Accounts, manage the businesses, and make sales. (Garrett Decl. at ¶ 5.) The social media account was used to direct business to the Amazon Selling Accounts. (Commerson Decl. at ¶ 6.) Individuals using the Amazon Selling Accounts email addresses "received and responded to communications from Amazon and logged into their Selling Accounts." (Garrett Decl. at ¶ 5.)

Moreover, Plaintiffs have verified that the email addresses remain active. On April 9, 2024, Plaintiffs sent test emails to each of the email addresses they propose to use for service. (Commerson Decl. at ¶ 10.) Plaintiffs received "no error notices, bounce back messages, or other indications that the test emails failed to deliver[.]" (*Id.*) This provides some evidence that Defendants are still using the email addresses.

In a similar situation in *Bright Solutions for Dyslexia*, alternative service by email was used where plaintiffs were "unable to locate [d]efendants and believed they may have moved to

ORDER - 6

China." *Bright Sols. for Dyslexia, Inc. v. Lee*, 2017 WL 10398818, at *4 (N.D. Cal. Dec. 20, 2017), *report and recommendation adopted*, 2018 WL 4927702 (N.D. Cal. Mar. 26, 2018). The plaintiffs obtained email addresses associated with eBay online seller accounts that defendants had used to sell allegedly counterfeit products. *Id.* at *3. "No errors were received" when plaintiffs sent test emails to two of the addresses. *Id.* The court granted plaintiffs' motion for alternative service by email and granted default judgment after defendants failed to respond even though "the emails had been successfully delivered with no errors." *Id.* at *4. The court concluded "email service was proper because [d]efendants structured their counterfeit business such that they could only be contacted by email" and, when served by email, "[t]hese emails did not bounce back." *Id.* at *7.

In contrast, in *Amazon.com Inc. v. KexleWaterFilters*, this Court denied alternative service by email because plaintiffs had not shown sufficient "indicia that the defendants would in fact receive notice of the lawsuit if the plaintiffs served them by email." *Amazon.com, Inc. v. KexleWaterFilters*, 2023 WL 2017002, at *4 (W.D. Wash. Feb. 15, 2023). The approach in *Bright Solutions for Dyslexia* was endorsed by this Court in that case, but in *KexleWaterFilters*, the plaintiffs had "not demonstrated that the email addresses associated with [d]efendants' Selling Accounts are still valid[.]" *Id.* Plaintiffs were permitted to "renew their motion with evidence of recent communications to [d]efendants that demonstrates that service by email is a reliable method to provide [d]efendants with notice of the pendency of this action." *Id.*

Here, as in *Bright Solutions for Dyslexia*, Plaintiffs have identified email addresses that Defendants used in their online businesses, and verified that those email addresses remain active. As in *Bright Solutions for Dyslexia*, Defendants structured their counterfeit business such that they can only be contacted by email. Together, these circumstances provide sufficient indicia

ORDER - 7

that Defendants are likely to receive notice if served by email. Moreover, Plaintiffs propose to serve "using an online service for service of process, RPost (www.rpost.com) that provides proof of authorship, content, delivery, and receipt[.]" (Commerson Decl. at ¶ 11.) Service via RPost should, according to Plaintiffs' representations to the Court, provide evidence as to whether service by email was, in fact, received. This offers reassurance that if the email addresses are not being monitored and used, then service will not be erroneously deemed completed.

The Court concludes service via the email addresses is reasonably calculated to apprise Defendants of this action and provide them an opportunity to respond, and thus satisfies due process concerns.

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion (dkt. # 39). Plaintiffs are authorized to serve:

(1)    Defendant Li Xinjuan at phmn9y3v@outlook.com;

(2)    Defendant Shenzhen Xinjianhe Technology Co., Ltd., at tuilianlun@163.com, phmn9y3v@outlook.com; and

(3)    Defendant Zhu Jian at zhuhua499936@163.com, l4ouoo@163.com, qiang593480751angu@163.com, tuilianlun@163.com.

Plaintiffs are ORDERED to complete service and file proof of service by **May 17, 2024**.

The Clerk is directed to send copies of this order to the parties and to the Honorable Marsha J. Pechman.

Dated this 7th day of May, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge