1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10    AMAZON.COM, INC.,                          CASE NO. C22-840 MJP
      AMAZON.COM SERVICES LLC, and
11    CARTIER INTERNATIONAL A.G.,                 ORDER GRANTING MOTION FOR
                                                  DEFAULT JUDGMENT
12                        Plaintiffs,

13              v.

14    LI XINJUAN, SHENZHEN
      XINJIANHE TECHNOLOGY CO.
15    LTD, ZHU JIAN, ZHOU FUHAN, ,

16                        Defendants.

17

18          This matter comes before the Court on Plaintiffs' Motion for Default Judgment. (Dkt. No.

19    54.) Having reviewed the Motion and all supporting materials, the Court GRANTS the Motion,

20    ENTERS default judgment, and PERMANENTLY ENJOINS Defendants as set forth in this

21    Order.

22

23

24

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 1

1

## BACKGROUND

2       Plaintiffs Amazon.com, Inc., Amazon.com Services LLC, and Cartier International A.G.,

3   have filed suit against Defendants Li Xinjuan, Shenzhen Xinjianhe Technology Co.

4   ("Shenzhen"), Ltd, Zhu Jian, and Zhou Fuhan, alleging that Defendants sold counterfeit Cartier-

5   branded products on Amazon's internet-based store. (Amended Complaint (AC) ¶ 9 (Dkt. No.

6   25); Declaration of Robert Garrett ¶ 3 (Dkt. No. 55).) Plaintiffs also allege that Defendant

7   Xinjuan and Shenzhen (the company Xinjuan owns and operates) used their social media

8   accounts to direct followers to "hidden links" that led them to buy counterfeit Cartier products

9   through the Amazon store. (AC ¶¶ 3-4, 16, 54, 70.)

10      Based on responses to third-party banking subpoenas, Plaintiffs allege Defendants are

11  associated with various "selling accounts" on Amazon that sold counterfeit Cartier products on

12  Amazon's store. (AC ¶¶ 15-19, 39-40.) Defendants are associated with the following selling

13  accounts: (1) Defendant Xinjuan and the corporate entity she controls, Defendant Shenzhen

14  Xinjianhe, had selling accounts named Phmn9y3v Jewelry and Miao-He (AC ¶¶ 16-17); (2)

15  Defendant Jian, who is alleged to be married to Xinjuan, had selling accounts named: Phmn9y3v

16  Jewelry, Vfdnytu, Yinji, and Amazing Jewelry You Want (AC ¶ 18); and (3) Defendant Fuhan

17  had selling accounts named: Byqone US and Byqone Network (AC ¶ 19). According to a

18  declaration for Robert Garret, a Principal Risk Manager for Amazon's Counterfeit Crimes Unit,

19  Defendants sold $190,005 in counterfeit goods through the various selling accounts as follows:

20  "(1) Phmn9y3v Jewelry: $4,831; (2) Miao-He: $25,157; (3) Amazing Jewelry You Want:

21  $7,350; (4) Vfdnytu: $5,974; (5) Yinji: $632; (6) Byqone US: $127,386; and (7) Byqone

22  Network: $18,675." (Declaration of Robert Garrett ¶ 3 (Dkt. No. 55).) Garrett claims that each

23  selling account sold counterfeit Cartier-branded products to customers in Washington state

24

1   between October 2019 and June 2021, though he does not identify the specific amounts sold in

2   Washington. (Id.) And according to Garrett, the Shanghai Public Security Bureau used the

3   information gathered by Plaintiffs in this case to raid Defendant Jian's home where they seized

4   counterfeit Cartier jewelry and Defendant Jian "confessed to selling counterfeit jewelry in the

5   Amazon Store." (Id. ¶ 4.) Garrett has not, however, explained the basis for his knowledge about

6   the raid or Jian's purported admission.

7        In addition to the allegations in the Amended Complaint which the Court accepts as true,

8   a representative from Cartier states that Cartier reviewed a sample of jewelry obtained by

9   Amazon and determined that they were counterfeit. (Declaration of Michael Sweeney ¶ 6 (Dkt.

10  No. 56).) The Cartier representative "believe[s] that Defendants' misuse of the Cartier

11  Trademarks deceived the public into believing that these were authentic Cartier products when

12  the goods were actually counterfeit" and that Defendants "infringed Cartier's valuable

13  intellectual property, deprived Cartier of legitimate sales, and tarnished Cartier's reputation by

14  selling counterfeit products under the Cartier brand." (Id. ¶ 7.)

15       Plaintiffs pursue claims of: (1) trademark infringement and counterfeiting in violation of

16  15 U.S.C. § 1114 (AC ¶¶ 74-80); (2) contributory trademark infringement in violation of 15

17  U.S.C. § 1114 (AC ¶¶ 81-88) (3) false designation of origin and false advertising in violation of

18  15 U.S.C. § 1125(a) (AC ¶¶ 89-104); (4) contributory false designation of origin and false

19  advertising in violation of 15 U.S.C. § 1125(a) (AC ¶¶ 105-11); and (5) violations of the

20  Washington Consumer Protection Act (AC ¶¶ 112-16).

21       Plaintiffs have served Defendants and obtained entry of default. (Dkt. Nos. 33, 43-45,

22  50.) Plaintiffs now move for default judgment and entry of a permanent injunction.

23

24

**ANALYSIS**

**A.    Legal Standard**

The Court has discretion to default judgment. Fed. R. Civ. P. 55(b); see Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (quotation and citation omitted). And "[t]he district court is not required to make detailed findings of fact." Id.

**B.    Jurisdiction**

Before entering default judgment, the Court must assure itself that it has subject matter jurisdiction and personal jurisdiction over Defendants.

There is little doubt that the Court has subject matter jurisdiction over Plaintiffs' claims. Plaintiffs brings claims under various federal laws, which fall within the Court's original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). And the Court has supplemental jurisdiction over Plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367(a).

The Court also finds that it has personal jurisdiction over Defendants, who are nonresidents. First, Plaintiffs have alleged that Defendants agreed to Amazon Services' Business Solutions Agreement, which required Defendants to consent to jurisdiction in this Court for

claims involving the misuse of intellectual property rights in the Amazon store. See Chan v.

Soc'y Expeditions, Inc., 39 F.3d 1398, 1406–07 (9th Cir. 1994); (AC ¶¶ 24 & Ex. B at 6, 9 (Dkt.

No. 25 at 48, 51)). This alone satisfies the Court that it has personal jurisdiction. Second, the

Court finds that it has personal jurisdiction due to Defendants' purposeful direction of its

activities in this forum, pursuant to Fed. R. Civ. P. 4(k)(2), the federal long-arm statute. (See AC

¶ 23; Garrett Decl. ¶ 3.) Under Rule 4(k)(2), personal jurisdiction may be established over a

defendant if the claims arise under federal law and: "(A) the defendant is not subject to

jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is

consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). To measure

whether the exercise of personal jurisdiction is consistent with the Constitution, the Court

engages in a "due process analysis [that] is nearly identical to the traditional personal jurisdiction

analysis with one significant difference: rather than considering contacts between the [defendant]

and the forum state, we consider contacts with the nation as a whole." Lang Van, Inc. v. VNG

Corp., 40 F.4th 1034, 1039 (9th Cir. 2022) (citation and quotation omitted). To satisfy due

process in this context, Plaintiffs must demonstrate that: (1) the nonresident defendant has either

purposefully directed his activities at the United States or purposefully availed himself of the

privilege of conducting activities in the forum; (2) the claim arises out of or relates to the

defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play

and substantial justice. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.

2004). If Plaintiffs satisfy the first two elements, the burden shifts to Defendants to make a

compelling case that the exercise of jurisdiction would not be reasonable. Id. at 802. To establish

"purposeful direction," the Court applies the three-part "effects" test from Calder v. Jones, 465

U.S. 783 (1984), which requires that the defendant must have "(1) committed an intentional act,

1    (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

2    suffered in the forum state." <u>Mavrix Photo, Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1228 (9th

3    Cir. 2011) (quotation and citation omitted).

4         The Court finds that Plaintiffs have satisfied the requisite elements of Rule 4(k)(2).

5    Plaintiffs pursues claims under federal law against Defendants, who are outside of any state

6    court's general jurisdiction. And the Court finds that the exercise of personal jurisdiction

7    comports with the Constitution. The Court points to three factors supporting this latter finding.

8         First, Defendants purposefully directed their activities at the United States. All three

9    elements of the "effects" test are satisfied. One, Defendants used their Amazon seller accounts to

10   advertise the sale of the counterfeit jewelry. Two, Defendants directed the counterfeit jewelry to

11   consumers in the United States by using Amazon's website, which targets American buyers.

12   Three, it was foreseeable that Defendants' marketing and sales of the counterfeit jewelry would

13   harm Amazon in the United States—where it is headquartered.

14        Second, Plaintiffs' claims arise out of Defendants' forum-based activities. The Ninth

15   Circuit "relies on a 'but for' test to determine whether a particular claim arises out of forum-

16   related activities and thereby satisfies the second requirement for specific jurisdiction. <u>Ballard v.</u>

17   <u>Savage</u>, 65 F.3d 1495, 1500 (9th Cir. 1995). Plaintiffs have satisfied this by showing that their

18   claims would not exist but-for Defendants' sale of counterfeit jewelry and their decision to target

19   consumers in the United States.

20        Third, because Plaintiffs have satisfied the first two prongs of personal jurisdiction under

21   Rule 4(k)(2), the burden shifts to Defendants to show personal jurisdiction is not reasonably

22   exercised here. By failing to appear in this matter, Defendants have conceded that the exercise is

23   reasonable. But for the sake of completeness, the Court has considered this factor and finds that

24

1  the exercise of personal jurisdiction is reasonable. The Court does so by balancing the following

2  factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

6  Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002). The balance of

7  these factors shows that that the exercise of personal jurisdiction is reasonable. Defendants

8  purposefully directed their activities at the United States. There is no evidence of the burden on

9  Defendants in defending themselves in this Court or conflicts with the sovereignty of a foreign

10  state. The United States has an interest in making sure that Plaintiffs' valid intellectual property

11  rights are protected and this forum can efficiently resolve the conflict. And Plaintiffs have an

12  interest in obtaining convenient and effective relief in this Court where there are no alternative

13  fora identified. Accordingly, the Court finds the exercise of personal jurisdiction to be

14  reasonable.

15  **C.    Eitel Factors Favor Default Judgment**

16       The Court reviews the Eitel factors to assess whether default judgment should be entered

17  and in what specific amounts. On balance, the seven Eitel factors weigh in favor of entry of

18  default judgment in Plaintiffs' favor.

19       **1.    Factor One: Prejudice to Plaintiffs**

20       Without entry of default judgment Plaintiffs will be prejudiced. Plaintiffs have attempted

21  to litigate this case and vindicate their rights under federal and state law against Defendants.

22  Defendants have failed to appear or participate in this litigation despite being served through

23  alternative means. Plaintiffs face prejudice by not being able to obtain complete relief on their

24

claims against Defendants without entry of default judgment. This factor weighs in favor of granting default judgment.

### 2. Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of the Amended Complaint

Plaintiffs have demonstrated the merit of their claims and the sufficiency of the Amended Complaint. The Court reviews each claim.

#### a. Trademark Infringement and Contributory Trademark Infringement

To prevail on a trademark infringement claim, Cartier must establish (1) a protected trademark and (2) the use of that trademark by a party accused of infringing on the trademark is likely to cause consumer confusion. See Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). Federal registration of a mark provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is protectable. See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927-28 (9th Cir. 2005).

To prevail on its claim of contributory trademark infringement, Cartier must establish that the Defendants Xinjuan and Shenzhen: (1) intentionally induced another to infringe on Cartier's trademarks, or (2) continued to supply a product or service to another who it knows or has reason to know is engaging in trademark infringement. Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc., 456 U.S. 844, 854 (1982). Where a contributory infringer, such as Xinjuan and Shenzhen, "provided services rather than a product, [the plaintiff] also need[s] to establish that [the infringer] had '[d]irect control and monitoring of the instrumentality used by a third party to infringe'" on the plaintiff's marks. Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc., 658 F.3d 936, 942 (9th Cir. 2011) (quoting Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 984 (9th Cir. 1999)). "Plaintiffs asserting contributory trademark infringement claims must prove that defendants provided their services with actual or constructive knowledge that the

1  users of their services were engaging in trademark infringement." Id. at 943 (citing Inwood

2  Labs., 456 U.S. at 854). "An express finding of intent is not required." Id

3        As alleged by Plaintiffs, Cartier has proved its trademark infringement claim by

4  demonstrating the following: (1) it owns the Cartier Trademarks (AC ¶ 8, Ex. A; Sweeney Decl.

5  ¶ 3-4 & Ex. A); (2) it reviewed samples of products that Defendant shipped to Amazon (AC ¶¶

6  57, 59, 61, 63, 65, 67, 69; Sweeney Decl. ¶ 6); and (3) it determined those products were

7  counterfeit imitations of Cartier-branded products that illegally bear the Cartier Trademarks

8  based on deviations from the authentic products' packaging and materials. (AC ¶¶ 57, 59, 61, 63,

9  65, 67, 6; Sweeney Decl. ¶ 6). The Court finds entry of default on these claims proper.

10        As alleged by Plaintiffs, Cartier has also proved its contributory infringement claim by

11  demonstrating the following: (1) Xinjuan and Shenzhen had actual knowledge of the other

12  Defendants' sale of counterfeit Cartier jewelry (See AC ¶¶ 3-4, 16-17, 47-54, 84); (2) Xinjuan

13  and Shenzhen encouraged, enabled, and assisted the other Defendants to sell counterfeit Cartier

14  jewelry on Amazon, including through the "hidden links" (id. ¶¶ 16-17, 56-57, 62-63, 85); and

15  (3) Xinjuan both owned and operated Shenzhen and operated at least two of the selling accounts

16  that sold counterfeit Cartier jewelry (id. ¶¶ 16-17, 56-57). These allegations, accepted as true,

17  suffice and the Court finds entry of default on these claims proper.

18        **b.**    **False Designation of Origin Claims**

19        To prevail on their claims of false designation of origin, Plaintiffs must show Defendants

20  "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading

21  description, or representation of fact, which (3) is likely to cause confusion or misrepresents the

22  characteristics of his or another person's goods or services." Freecycle Network, Inc. v. Oey, 505

23  F.3d 898, 902 (9th Cir. 2007). Any person who believes they are likely to be damaged by such an

24

act may sue. 15 U.S.C. § 1125(a); <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 131–32 (2014).

Both Cartier and Amazon have proved their false designation claims. Plaintiffs have shown that Defendants sold counterfeit imitations of Cartier-branded products bearing the Cartier trademarks. (AC ¶¶ 8, 47-60; Sweeney Decl. ¶¶ 5-6.) This misuse of the trademarks was designed to deceive the public as to the authenticity of Defendants' products. (AC ¶¶ 8, 47-60.) And Defendant's use of the Cartier trademarks harmed its goodwill. (<u>See</u> AC ¶¶ 5-7; Sweeney Decl. ¶ 7.) Similarly, Defendants deceived Amazon about the authenticity of the counterfeit products it was advertising, marketing, offering, and selling through Amazon's website. As alleged, this violated Amazon's Seller Agreement. (AC ¶ 41, Ex. B.) And Defendants' use of Amazon's website to sell its goods harmed Amazon's reputation and brand. (AC ¶¶ 27-35, 96.) The Court finds entry of default on these claims proper. The Court also notes that Plaintiffs do not move for default judgment on their false advertising claims, which are therefore not the subject of this Order. (<u>See</u> Mot. at 9 n.5.)

### c.    Contributory False Designation Claim

"Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent." <u>Perfect 10, Inc. v. Visa Int'l Serv. Ass'n</u>, 494 F.3d 788, 794–95 (9th Cir. 2007). To prove their contributory false designation claim against Xinjuan and Shenzhen, Plaintiffs must establish that these defendants: (1) had knowledge of a third party's infringing activity, and (2) induced, caused, or materially contributed to the infringing conduct. <u>Id.</u> at 795. "In an Internet context, we have found contributory liability when the defendant 'engages in personal conduct that encourages or assists the infringement.'" <u>Id.</u> (quoting <u>A & M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1019 (9th Cir. 2001)). When the defendant supplies a service, the court considers "the extent of control exercised by the

1    defendant over the third party's means of infringement." Lockheed Martin Corp. v. Network

2    Sols., Inc., 194 F.3d 980, 984 (9th Cir. 1999). "Plaintiffs asserting contributory trademark

3    infringement claims must prove that defendants provided their services with actual or

4    constructive knowledge that the users of their services were engaging in trademark

5    infringement." Louis Vuitton, 658 F.3d at 943 (citing Inwood Labs., 456 U.S. at 854). "An

6    express finding of intent is not required." Id.

7        For the same reasons explained as to the contributory trademark infringement claims,

8    Plaintiffs have adequate proven their claim for contributory false designation claims against

9    Xinjuan and Shenzhen. The Court finds entry of default on these claims proper.

10              **d.    CPA Claim**

11       To prevail on its CPA claim, Plaintiffs must establish "(1) an unfair or deceptive act or

12   practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a

13   person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166

14   Wn.2d 27, 37 (2009) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105

15   Wn.2d 778, 784 (1986)). "[A] claim under the Washington CPA may be predicated upon a per se

16   violation of statute, an act or practice that has the capacity to deceive substantial portions of the

17   public, or an unfair or deceptive act or practice not regulated by statute but in violation of public

18   interest." Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787 (2013).

19       The Court agrees with Plaintiffs that they have stated a claim under the CPA.

20   Defendants' sale of counterfeit jewelry is an unfair and deceptive act that occurred in trade,

21   affecting the public interest, and which has harmed Plaintiffs' goodwill. The Court finds entry of

22   default on this claim proper.

23

24

### 3.      Factor Four: Sum of Money at Stake

The amount of money Amazon determined Defendant has made from selling counterfeit jewelry is quite small. Amazon has identified $190,005 in proceeds from the sales. Given the size of the sales, this factor weighs in favor of default judgment.

### 4.      Factor Five: Possibility of Dispute of Material Facts

The Court finds little possibility that the core, material facts are in dispute. Not only have Defendants failed to appear in this action, but Plaintiffs have provided detailed evidence in support of their claims that is likely difficult to be rebutted. This factor favors entry of default judgment.

### 5.      Factor Six: Whether Default is Due to Excusable Neglect

There is no evidence that Defendants' failure to appear is due to excusable neglect. This factor favors entry of default judgment.

### 6.      Factor Seven; Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims on the merits. But Defendant's decision not to appear in this case vitiates against this policy. This factor weighs in favor of entry of default judgment.

*      *      *

Having considered and balanced the <u>Eitel</u> factors, the Court finds that entry of default judgment is proper on all claims. On this basis, the Court GRANTS the Motion.

### D.      Amount of the Default Judgment

Cartier ask the Court to award $25,000 in statutory damages, but only as "statutory damages against Defendant for its willful and unauthorized use of the Cartier Trademarks." (Mot. at 14 (Dkt. No. 54 at 24).) Plaintiffs ask for no damages to be awarded on their CPA claim.

1    Plaintiffs correctly note they may seek statutory damages between $1,000 to $2,000,000 per

2    mark given that Defendants' failure to defend this action constitute an admission their

3    infringement was willful. (Mot. at 11 (citing 15 U.S.C. § 1117(c)(1); Derek Andrew, Inc. v. Poof

4    Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008).) As such, Plaintiffs may seek statutory

5    damages ranging between $4,000 and $8,000,000, given the four marks at issue. See 15 U.S.C. §

6    1117(c)(1).

7            Cartier asks the Court to award statutory damages as to each Defendant based on trebling

8    the total sales of counterfeit Cartier-branded products, for a total of $570,015. (See Mot. at 17-

9    20.) Specifically, Cartier asks for: (1) $75,471 against Xinjuan and Shenzhen jointly and

10   severally, for sales through the Miao-He selling account; (2) $56,361 against Jian, Xinjuan, and

11   Shenzhen jointly and severally, for sales through several selling accounts; and (3) $438,183

12   against Fuhan, Xinjuan, and Shenzhen jointly and severally, for sales through the Byqone US

13   and Byqone Network selling accounts. (Id.) The Court finds this damages request to be

14   reasonable, in light of the nature of the deceptive scheme, the scope of the sales, the involvement

15   of each Defendant, as well as the need for compensation, deterrence, and punishment. The Court

16   therefore awards damages as to the Defendants in the amounts and allocations sought.

17           The Court notes that it has not awarded any damages to Plaintiffs on their CPA claim, as

18   they did not ask for any such relief.

19   **E.     Injunctive Relief**

20           The Court finds it appropriate to enter a permanent injunction against Defendants on the

21   terms Plaintiffs request. "As a general rule, a permanent injunction will be granted when liability

22   has been established and there is a threat of continuing violations." MAI Sys. Corp. v. Peak

23   Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993). And the Lanham Act authorizes "the 'power

24

1  to grant injunctions according to principles of equity and upon such terms as the court may deem

2  reasonable, to prevent the violation of any right' of the trademark owner." <u>Reno Air Racing</u>

3  <u>Ass'n., Inc. v. McCord</u>, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116(a)).

4        A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered

5  an irreparable injury; (2) that remedies available at law, such as monetary damages, are

6  inadequate to compensate for that injury; (3) that, considering the balance of hardships between

7  the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

8  would not be disserved by a permanent injunction." <u>eBay, Inc. v. MercExchange, L.L.C.</u>, 547

9  U.S. 388, 391 (2006).

10        The Court finds that all four <u>eBay</u> factors favor entry of a permanent injunction. First,

11  based on the admitted allegations in the amended complaint, Defendants' trademark

12  infringement and violations of the CPA have caused irreparable harm to Plaintiffs' goodwill and

13  reputation and have caused it to incur expenses to prevent further damage. Second, Plaintiffs

14  have shown that monetary damages alone will not necessarily prevent Defendants from engaging

15  in further infringing conduct. Given Defendants' decision not to appear in this case, there can be

16  no assurances that it will no longer engage in the conduct at issue in this case. This satisfies the

17  Court that monetary damages alone are insufficient. Third, the equities favor Plaintiffs, who seek

18  to enjoin Defendants from engaging in illegal conduct that benefits only Defendants. This favors

19  Plaintiffs and the requested injunction. Fourth, an injunction prohibiting Defendants from

20  engaging in further conduct that infringes on Plaintiffs' trademarks will serve the public interest.

21  The Court GRANTS the Motion and ENTERS the following PERMANENT INJUNCTION

22  against Defendants and each of their officers, agents, servants, employees, and attorneys, and all

23  others in active concert or participation with them who receive actual notice of this Order from:

24

1.   Selling counterfeit or infringing products in Amazon's stores;

2.   Selling counterfeit or infringing products to Amazon or any Amazon affiliate;

3.   Manufacturing, importing, distributing, offering to sell, or selling any product using Cartier's brand or trademarks, or which otherwise infringes Cartier's intellectual property, in any store or in any medium; and

4    Promoting or advertising through social media, or any other method or channel of communication, any product using the Cartier brand or trademarks without Cartier's authorization;

5.   Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

The Court also retains jurisdiction over this case for the purpose of enforcing this Order and Injunction.

## CONCLUSION

The Court finds that Plaintiffs are entitled to entry of default judgment in their favor and for an order enjoining Defendants from further conduct that violates the Trademark laws and the CPA. As explained above, the Court GRANTS the Motion for Default Judgment and PERMANENTLY ENJOINS Defendants on the terms specified above. Plaintiffs' counsel is hereby directed to serve a copy of this Order and Injunction on Defendants.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 16, 2024.

Marsha J. Pechman
United States Senior District Judge